
RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 7/21/05
BY OM

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MICHAEL E. CARTER | CIVIL ACTION NO. 04-0502 |
| VERSUS | JUDGE DONALD E. WALTER |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Doc. #26] filed on behalf of defendants, the City of Shreveport, former Chief of Police James N. Roberts, Assistant Chief of Police Charles Owens, Captain Allen Hall, Lieutenant Cheryl Jeter, Sargent Paul Rambin, Sargent James Muller, Sargent A. B. Pierce, Sargent Jackie Willis, Sargent Bill Offer, Sargent Allen Johnson, and Corporal Amy Muller, pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes this motion. For the reasons assigned herein, defendants' motion is **GRANTED**, and plaintiff's claims are **DISMISSED**.

## STATEMENT OF THE CASE

Plaintiff, Michael E. Carter ("Carter"), a law enforcement officer for the City of Shreveport, brings this action against multiple defendants in their individual and official capacities, and against the City of Shreveport (the "City"), asserting that his statutory and constitutional rights were violated when he was investigated and placed on administrative leave as a result of allegations made by his former girlfriend regarding an unauthorized entry into her home and domestic abuse. Plaintiff also asserts that he was unlawfully placed on administrative leave pending the investigation, and was not returned to his previous position in Human Resources once the investigation was concluded as a

result of his complaints regarding the mistreatment of black officers, and his active participation in police union activities.

According to Carter, for several years prior to February 25, 2003, he maintained an ongoing relationship with a female, Desiree Earle ("Earle"), who resided on Stonebrook Place in Shreveport, Louisiana. Amended Complaint, ¶3.2. Prior to February 2003, Carter and Earle lived together in DeSoto Parish but they eventually sold their house and moved into separate homes in Shreveport. Id. at ¶3.6. On February 24, 2003, Carter went by Earle's home to allegedly bring her dinner, a gift and to spend time with her but Earle was not home when Carter arrived. Id. at ¶3.11. Carter entered Earle's home with a key kept in a storage shed outside of Earle's home. Id. Carter tried to contact Earle on her cellular phone multiple times to no avail. Id. at ¶3.12. Carter fell asleep at Earle's home and awoke at 6:30 a.m. on February 25, 2003. Id. Earle had not returned home. Id. Carter asserts that he left Earle a letter on her pillow, and a message on her bathroom mirror in lipstick. Id. at ¶3.13. Carter then left Earle's home and returned the key to the storage shed. Id.

Earle returned to her home at approximately 7:00 a.m. on February 25. Affidavit of Paul Rambin ("Rambin Aff."), Defendants' Exh. 12; Statement of Desiree Earle ("Earle Statement"), Defendants' Exhibit 7, p. 1. She found, among other things, a note on her bathroom mirror: "I love you, I will always love you, good bye my love." Id. The note was signed by "Pickup," Carter's nickname. Id. Earle also found a note on her pillow wherein Carter indicated that he assumed Earle had been with another man the night before. Id. Carter also wrote that he had waited at her apartment with candles lit, and that he was "hoping and dreaming about [them] having children."

Id. Earle contacted her friends and co-workers, Zeke and Joy Aull,[1] by telephone for comfort and advice as Earle was upset about the "break-in" and frightened for her safety. Earle Aff., p. 2; Aull Aff., p. 2. Earle also called Melissa Kater Johnson, a friend and law enforcement officer with the Shreveport Police Department ("SPD"). Earle Statement, p. 1. Upon advice from her friends, Earle called the SPD. Id.; Earle Aff., p. 2.

The Aulls arrived at Earle's residence at approximately 8:45 a.m. Melissa Kater was already present. Aull Aff., p. 2. Pursuant to Earle's call, Officer Joseph Dews ("Dews") of the SPD arrived on the scene. Id. at p. 3. Dews contacted his supervisor, Sargent A.B.Pierce ("Pierce"). Id. Sargents Paul Rambin ("Rambin") and James Muller ("Muller"), and Corporal Amy Muller ("Amy Muller"), all of the SPD, also arrived at Earle's home. Id.

Rambin took Earle's statement at which time she stated that Carter did not have the authority to enter her home. Rambin Aff., p. 2; Earle Statement. Earle also advised Rambin that she and Carter had a physically and verbally abusive relationship. Id. Earle asserted that, in the past, Carter hit and choked her, and that she was scared of Carter. Id.

Carter was ordered to the police station where he was interviewed in the office of Lieutenant Cheryl Jeter. Amended Complaint, ¶3.26. Assistant Chief of Police Charles Owens ("Owens") recommended to then-Police Chief James Roberts ("Roberts") that Carter's service weapon be taken, and that Carter be placed on administrative leave pending the investigation into Earle's complaint. Affidavit of Charles Owens ("Owens Aff."), Defendants' Exh. 21, p. 2. Captain Scott Spalding

---

[1] Zeke Aull is the Director of Public Safety Chief of Police for Centenary while Joy Aull is the Police Captain of Special Services for Centenary. Affidavit of Desiree Earle ("Earle Aff."), Defendants' Exhibit 24, p. 1. The Aulls' jurisdiction is limited to Centenary's campus and contiguous streets and properties. Joint Affidavit of Zeke and Joy Aull ("Aull Aff."), Defendants' Exh. 25.

("Spalding"), acting on instructions from Assistant Chief of Police Bill Wilson ("Wilson"), placed Carter on administrative leave. Amended Complaint, ¶3.28. Carter was required to surrender his service weapon, badge and identification. He could have no outside employment.[2] Id. On March 4, 2003, Carter was placed on extended administrative leave. Id. at ¶3.30. On March 14, 2003, the Caddo Parish District Attorney's Office notified the SPD by letter that no criminal charges would be filed against Carter. Id. at ¶3.32. On March 15, 2003, Carter was released from administrative leave and allowed to return to full duties. Id. at ¶3.33. At that time, Carter was advised that he would be transferred from his position in the Human Resources Department to the Juvenile Detective office. Id. at ¶3.34.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id.

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine

---

[2]Carter held an off-duty security position on Saturdays at Shreve Memorial Library. Amended Complaint, ¶3.29.

issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party is not required to negate the elements of the non-moving party's case. Lawrence, 163 F.3d at 311. However, where the moving party bears the burden of proof on an issue, it must produce evidence that would, if uncontroverted at trial, warrant a judgment as a matter of law. International Short Stop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S.Ct. 936 (1992).

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts. Id.

Pursuant to Local Rule 56.1, the moving party shall file a Statement of Uncontested Facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2W requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for the purposes of the motion, unless specifically denied." Local Rule 56.2W.

## LAW AND ANALYSIS

I. **Title VII Race Discrimination and Retaliation Claims.**

A. **Claims Against Chief Roberts and Carter's Fellow Police Officers.**

Title VII makes it unlawful for an "employer" to "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex . . ." 42 U.S.C. § 2000e-2(a)(1). It is well settled in the Fifth Circuit that "a party may not maintain a suit against both an employer and its agent under Title VII." Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999). In Indest, the Fifth Circuit explained that "[w]hile Title VII defines the term employer to include 'any agent' of an employer . . . , this circuit does not interpret the statute as imposing individual liability for such a claim." Id.

In the present case, Carter names the individual defendants, including former Chief Roberts, in both their individual and official capacities, as defendants to this Title VII claim, as well as the City of Shreveport. In accordance with 5th Cir. jurisprudence, plaintiff cannot maintain his claims against any of the individual defendants under Title VII, and those claims must be dismissed.

B. **Claims Against the City of Shreveport.**

Carter's discrimination and retaliation claims are subject to the burden shifting framework enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under McDonnell Douglas, Carter has the initial burden of establishing a prima facie case by a preponderance of the evidence. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000). To establish a prima facie case of discrimination on the basis of race, a plaintiff must show he was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated. Abarca v.

6

Metropolitan Transit Authority, 404 F.3d 938, 941 (5th Cir. 2005). The prima facie case for retaliation requires plaintiff to show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996).

The adverse employment action required under both causes of action must be an ultimate employment decision along the lines of hiring, granting leave, discharging, promoting, or compensating. Dollis v. Rubin, 77 F.3d 777, 782 (5th Cir. 1995). In other words, an ultimate decision must be "[a] tangible employment action constitut[ing] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

Once Carter has established a prima facie case, the burden then shifts to the City of Shreveport to proffer a legitimate, non-discriminatory reason for the challenged employment action. Abarca, 404 F.3d at 941. If the City satisfies its burden, the burden is then shifted back to Abarca to demonstrate that the City's legitimate non-discriminatory reason was simply a pretext of discrimination. Id.

Carter challenges his being placed on administrative leave pending the investigation into Earle's charges of unauthorized entry and abuse. At the most, Chief Roberts' decision to place Carter on administrative leave was an "interlocutory or mediate" decision that might lead to an ultimate decision rather than an "ultimate employment decision." Interlocutory or mediate decisions are not adverse employment actions under Title VII. See Watts v. Kroger Co., 170 F.3d 505 (5th Cir. 1999). Thus, Carter's being placed on administrative leave does not meet the adverse

employment action element of his Title VII claims.

Even assuming that Carter could establish a prima facie case of discrimination or retaliation related to his being placed on administrative leave, the City of Shreveport has provided a legitimate, non-discriminatory reason for such action. The SPD has a policy mandating that complaints by citizens against law enforcement officers be evaluated administratively by an internal affairs group to determine the merits of the complaint and the need for disciplinary action. See Roberts Aff., p. 2. The SPD has another policy mandating that the SPD thoroughly and completely investigate citizen complaints of domestic abuse. Id. In light of the allegations of domestic abuse by Earle, the SPD, in compliance with its own policies, was obligated to investigate the complaints against Carter.

The SPD also had a policy authorizing the Chief of Police to place a law enforcement officer who is the subject of a citizen complaint on administrative leave pending an internal affairs investigation. Roberts Aff., p. 3. Carter concedes that Chief Roberts acted consistent with SPD policy when he placed Carter on administrative leave. See Plaintiff's Opp. to Defendants' Motion for Summary Judgment, p. 2. However, Carter asserts that Chief Roberts failed to follow SPD policy when he did not place Gary Alderman on administrative leave pending an internal affairs investigation of Alderman on charges of misappropriation or theft.

The City correctly asserts that the charges against Alderman are distinguishable from those asserted against Carter. The charges against Alderman did not involve violence, abuse, guns or private citizens. As the City met its burden in the McDonnell Douglas analysis, the burden shifted back to Carter to raise a fact question regarding pretext.

Plaintiff points to no evidence beyond mere conclusory allegations suggesting that the stated reason for the investigation of Carter and his being placed on administrative leave – that a private

citizen accused him of unauthorized entry of her home and domestic abuse – was pretextual. Accordingly, plaintiff's Title VII claims based on his being placed on administrative leave must fail.

Carter further challenges his transfer from the Human Resources Department to the Juvenile Detective office. Again, assuming that Carter has established a prima facie case of discrimination and retaliation relating to his transfer, the City then has the burden of providing a legitimate, non-discriminatory reason for the employment action. Defendants assert that pursuant to La. R.S. 33:2489,[3] Chief Roberts had the right to transfer Carter to another position within the SPD where the SPD could get the maximum use of Carter's skills and to serve the existing needs of the SPD. Roberts Aff., pp. 7-8. Defendants further assert that at the Civil Service Hearing, Carter stated that he did not want to be transferred back to the Human Resources Bureau. See Civil Service Hearing Minutes, Defendants' Exh.6.

In his opposition, Carter asserts that the SPD would not achieve maximum use of his skills as a Juvenile Detective since he held a master's degree in the field of human resources/personnel management, and was "on the verge" of receiving his doctorate in the field. Carter also asserts that Spalding, the head of Human Resources, told Chief Roberts that Carter was needed in his previously held position. Plaintiff has failed to provide the Court any evidentiary support for his assertions.

---

[3]La. R.S. 33:2489 provides:

Any employee may be transferred from any position in the classified service to any other position of the same class within the classified service, at the pleasure of the appointing authority without notice to and confirmation by the board.

Any regular employee so transferred shall have the right of appeal to his board upon the grounds (1) that his transfer was made to a position not included within the class to which his position was previously allocated, or (2) that the position to which he has been transferred is not included within the classified service; or (3) the transfer was made deliberately to discriminate against him.

Further, there is no evidence before this Court, beyond bald allegations, that any racial or union-related animus was involved in Chief Roberts decision to transfer Carter from one department to another.

As plaintiff has failed to meet his burden of proof on summary judgment as to his Title VII discrimination and retaliation claims, they must fail as a matter of law.

### III. §1983 Claims.

#### A. Qualified Immunity.

The determination of immunity is a threshold question that must be resolved inasmuch as it determines a defendant's immunity from suit rather than immunity from damages. Brewer v. Wilkinson, 3 F.3d 816 (5th Cir. 1993). The court must use a two-step analysis to determine whether a defendant is entitled to qualified immunity: (1) has the plaintiff alleged the violation of a clearly established constitutional right; and (2) was the defendant's conduct objectively reasonable? See Williams v. Bramer, 180 F.3d 699, 702 (5th Cir. 1999).

First, the court must determine whether the plaintiff has alleged a deprivation of a constitutional right at all. Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). This determination is made using currently applicable constitutional standards. Nerren v. Livingston Police Department, 86 F.3d 469, 473 (5th Cir. 1996). If so, the court must then decide if the defendant's conduct was objectively reasonable, using the standards applicable at the time the events occurred. Id.; Johnston v. City of Houston, 14 F.3d 1056, 1059 (5th Cir. 1994). If, upon viewing the evidence in the light most favorable to the nonmovant, reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity. Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987);

Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992).

The doctrine of qualified immunity shields public officials "performing discretionary functions 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" Fraire, 957 F.2d at 1273, quoting Anderson, 483 U.S. at 638. The qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

Plaintiff has alleged a violation of his constitutional right to be free from race discrimination by a public employer and a violation of his rights to free speech and assembly. Thus, the issue before this Court with regard to qualified immunity is whether the defendants' actions were objectively reasonable. This Court finds that they were.

The only evidence before this Court indicates that the individuals named as defendants who actually played an active role in the investigation of Earle's charges against Carter merely performed their duties as law enforcement officers. The unchallenged affidavits provided this Court show that the decision to place Carter on administrative leave pending the internal affairs investigation was based on a SPD policy. Carter was placed on leave for a total of nineteen days. Carter was released from leave the day after the SPD received the letter from the District Attorney's Office that stated that no criminal charges would be filed based upon a "lack of corroborating evidence." See Amended Complaint, ¶¶3.32, 3.33.

The charges against Carter – the unauthorized entry into a former girlfriend's home, and domestic abuse – are eerily reminiscent of the charges initially brought against the perpetrators in cases such as Shipp v. McMahon, 234 F.3d 907 (5th Cir. 2000), Ricketts v. City of Columbia, 36

F.3d 775 (8th Cir. 1994), and Piotrowski v. City of Houston, 237 F.3d 567, 584 (5th Cir. 2001). Generally, in those cases, the plaintiffs brought, *inter alia*, §1983 actions against law enforcement officers and municipalities for injuries sustained allegedly as a result of a law enforcement officer's failure to act on allegations of domestic abuse. Whether Earle's allegations of abuse had merit is irrelevant. It is only relevant that the SPD was aware of those allegations. In light of the aforementioned line of cases and the potential threat of litigation, the individual officers and Chief Roberts had no choice to but to investigate the allegations of domestic abuse more thoroughly, to take away Carter's service weapon and to remove all indicia of authority, i.e., Carter's badge and identification. Thus, defendants clearly acted in an objectively reasonable manner, and are entitled to qualified immunity.

This Court will assume, for purposes of defendants' motion, that Carter's transfer from the Human Resources Department to the Juvenile Detective office was a lateral transfer without economic effect, as there is no evidence to the contrary before the Court. Further, as noted above, Chief Roberts had the authority to make such a transfer. See La. R.S. 33:2489. Chief Roberts' actions were objectively reasonable, and plaintiff's §1983 claims based upon his transfer should be dismissed.

### B. Municipal Liability Under §1983

Carter's suit against Chief Roberts in his official capacity is treated as a claim against the City of Shreveport. Brooks v. George County, Miss., 84 F.3d 157, 165 (5th Cir. 1996). Municipal liability under §1983 may not be based upon a theory of *respondeat superior*. Monell v. Dept. of Social Services of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." Id. at 694, 98 S.Ct. at 2037-38. To establish a municipality's liability for a constitutional tort, the plaintiff must show first, that the municipality adopted a policy with "deliberate indifference" to its known or obvious consequences, and second, that the municipality was the "moving force" behind the constitutional violation. Id.

The only policies or customs brought to this Court's attention are the SPD policies requiring an investigation of law enforcement officers who are accused of committing crimes against private citizens, placement on administrative leave of the accused officer pending such an investigation, and the surrender of one's service weapon, badge and identification while on administrative leave. None of these policies violates a constitutional right.

Plaintiff provides this Court no support for his bald assertions regarding racially discriminatory or anti-union policies of the SPD. Plaintiff has failed to come forward with specific facts sufficient to counter Shreveport's contentions that its policies and customs were not constitutionally deficient. Plaintiff has provided this Court no evidence to overcome his burden of producing specific facts showing a genuine issue for trial. Therefore, plaintiff's §1983 claims against the City of Shreveport and against Chief Roberts in his official capacity must also fail as a matter of law.

**IV.     State Law Claims.**

Plaintiff broadly asserts that defendants "conspired to deprive the petitioner of his State civil rights." Amended Complaint, ¶5.3. Louisiana's anti-discrimination in employment is governed by La. R.S. 23:332(A) which provides that it is unlawful for an employer to intentionally discriminate against an individual with respect to his compensation, or his terms, conditions or privileges of

13

employment, because of the individual's race. Motton v. Lockheed Martin Corp., 900 So.2d 901, 909 (La. App. 4 Cir. 2005). Louisiana courts have looked to federal jurisprudence to interpret Louisiana discrimination laws. Id. Thus, for the reasons stated as to Carter's Title VII and §1983 claims, Carter's state law claims must also fail.

## CONCLUSION

For the reasons stated above, plaintiff has failed to meet his burden of proof on summary judgment. Accordingly, his claims are **DISMISSED WITH PREJUDICE.**

---
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE